Paul LYNCH and June I. Lynch,
Appellants,

v.

Alfred O. McCANN and James J. Peot, d/b/a McCann and Peot, Willis Flooring Company, and Arrow Lumber Company, Inc., Appellees.

No. 1142.

Supreme Court of Alaska.

Dec. 18, 1970.

Juliana D. Wilson of Wilson & Wilson, Anchorage, for appellants.

Edward G. Burton of Burr, Pease & Kurtz, Inc., Anchorage, for appellee Arrow Lumber Co., Inc.

Albert Maffei, Anchorage, for appellees McCann and Peot.

No appearance for appellee Willis Flooring Co.

Before DIMOND, RABINOWITZ, and CONNOR, JJ., and FITZGERALD and LEWIS, Superior Court Judges. [BONEY, Chief Justice, not participating].

OPINION

RABINOWITZ, Justice.

This appeal concerns questions of priority between mechanics' lienors and beneficiaries under a deed of trust. Appellants Paul and June Lynch, together with Joseph and Margaret Reilly, were partners in the ownership and operation of an Anchorage bar named "Pal Joey."[1] The Reillys desired to add restaurant facilities to the Pal Joey bar, but the Lynches did not, so the Reillys agreed to buy out the Lynches. The Reillys then borrowed $60,000 from

---

1. The Pal Joey building and the addition to it at issue in this case are located entirely upon Lot 8, except for some parking lot paving; the other Reilly-Lynch Lots 5, 6, 7, and 9 were and are vacant and unimproved.

the First National Bank of Anchorage, upon the security of a deed of trust covering all real property and "tenements, hereditaments and appurtenances thereunto belonging,"[2] and paid part of the $60,000 to the Lynches. They then executed a second deed of trust on the same property running to the Lynches to secure payment of the remaining balance of $80,000 due the Lynches for their partnership interests. This second deed of trust was by its terms subordinated to the deed of trust the Reillys executed in favor of the First National Bank of Anchorage.[3]

In September of 1966, after the trust deeds had been executed and recorded, the Reillys, in order to add restaurant facilities, commenced construction of an addition to the existing Pal Joey building, as well as the refurbishing of the existing structure. The addition, approximately 10 to 12 feet wide, ran the width of the existing structure and was designed and constructed as part of the old building rather than as a separate structure. The old building was approximately 36 feet wide and 72 feet long. The addition was about one-seventh the size of the old Pal Joey building.

Appellees McCann and Peot furnished labor and materials for plumbing and heating modifications in connection with the new addition and existing structures. Arrow Lumber Company furnished panelling materials, and Willis Flooring Company provided labor and materials for the flooring.

Subsequently, the Reillys defaulted on their obligations to the Lynches, McCann and Peot, Arrow Lumber, and Willis Flooring. The Lynches foreclosed their deed of trust on all the property, and purchased the property at the foreclosure sale. Afterwards a trustee's deed was executed and delivered to them. The mechanics' lienors in the case at bar then filed claims against the subject property and instituted foreclosure actions.

The superior court determined that the mechanics' lienors had valid claims only as to the lot on which the new addition to the Pal Joey building was located.[4] The court granted the mechanics' lienors foreclosure, decreeing that

> the liens of the three lien claimants, insofar as the new addition is concerned are prior and paramount to all other interests of any of the other parties.[5]

The Lynches appeal this judgment and decree of foreclosure.

Whether or not the mechanics' lienors have priority over the Lynches as to the addition raises a question of first impression regarding interpretation of our mechanics' lien statutes. Alaska's legislature provided that a purchaser at a deed of trust sale takes land subject only to those incumbrances created before execution of the trust deed, except where provided oth-

---

2. At the time of this transaction the bank appraised the existing building and paving which housed the "Pal Joey" bar at $42,000 and the building and land together at $129,500. The amount of $20,-000 of the $60,000 bank loan was applied by the bank to outstanding Reilly debts owed to the bank, $20,000 was applied by the bank to outstanding Reilly-Lynch partnership debts owed to the bank, and $20,-000 was paid as a down payment to the Lynches for their interests in the partnership.

3. These transactions were completed and the deeds of trust recorded in July 1966.

4. See note 1, supra.

5. The trial court also found that as to the portion of Lot 8 occupied by the original building, as well as the original building, First National Bank had priority over the Lynches and the lien claimants; that the Lynches had priority over the three lien claimants as to all of Lot 8 and the original buildings but that the lien claimants had priority as to the addition to the existing building. The court ordered that the addition be sold separately from the land and removed by the purchaser; proceeds of the sale were to be applied first to costs of the sale, then pro rata amongst the lien claimants.

erwise by statute.[6] Thus, for the mechanics' liens in the case at bar to burden the addition, they must come within some statute or rule of law conferring priority upon them. The trial court concluded that the three lien claimants had priority over the Lynches, the purchasers of the deed of trust, as to the new addition, though not as to the underlying land. This result was reached by treating the new addition as "original construction," so that the mechanics' liens in question had priority, by virtue of AS 34.35.060(c), over the earlier deeds of trust.

Regarding priorities, AS 34.35.060(c) provides that:

A lien created by §§ 50—120 of this chapter in favor of a person actually performing labor upon or furnishing material used in a building or other improvement in its original construction is preferred to a prior lien, mortgage, or other incumbrance upon the land on which the building or other improvement is constructed.[7]

■ The issue under this statute has properly been regarded by the parties as whether the addition to the Pal Joey building is "original construction." The parties' briefs provide little illumination. On the particular facts of the case at bar, and based upon what is considered an appropriate reading of the relevant statutes, we hold that the addition to the Pal Joey building cannot be characterized as "original construction" under the priority provisions of AS 34.35.060(c).

■ Since we have not been cited to any legislative history which would shed light on the intended meaning of the term "original construction," we must resort to general rules of statutory construction. By law, this court is required to construe words and phrases according to their "common and approved usage" unless such words and phrases have acquired peculiar meaning by virtue of statutory definition or judicial construction.[8] Counsel point out that Alaska's use of the phrase "original construction" appears to be *sui generis* in the lien laws of this country. Common and approved usage of "original" defines this word as "pertaining to the original or beginning; preceding all others, first in order or existence."[9] This definition comports with the language and purpose of AS 34.35.060(c), which accords priority to mechanics' lienors who furnish labor or materials for a building or other improvement in its "original construction."[10] The lien is

6. Concerning deeds of trust, AS 34.20.090 (a) and (b) provides:
   (a) The sale and conveyance transfers all title and interest which the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest he may have acquired before the sale, and the party executing the deed of trust, his heirs and assigns have no right or privilege to redeem the property, unless the deed of trust so declares.
   (b) The purchaser at a sale, his heirs and assigns are, after the execution of a deed to him by the trustee, entitled to the possession of the premises described in the deed as against the party executing the deed of trust or any other person claiming by, through or under him, after filing the deed of trust for record in the recording district where the property is located.

7. AS 34.35.060(d) states in part that in enforcing the mechanics' lien.
   the building or other improvement may be sold separately from the land. When sold separately, the purchaser may remove the building or other improvement within a reasonable time after the sale, not to exceed 30 days, upon the payment to the owner of the land of a reasonable rent for its use from the date of its purchase to the time of removal.

8. AS 01.10.040.

9. Webster's International Dictionary 1592 (3d ed. 1961).

10. AS 34.35.120 provides in part:
    In §§ 50—120 of this chapter.
    (1) 'building or other improvement,' includes a wharf, bridge, ditch, flume, tunnel, fence, well, land clearing, machinery, aqueduct to create hydraulic power, or for mining or other purposes, and all other structures and superstructures * * *.

preferred to any "prior lien, mortgage, or other incumbrance *upon the land* on which the building or other improvement is constructed." (emphasis supplied) Analysis of the text of AS 34.35.060(c) discloses a legislative intent to limit the priority granted generally to situations where the construction preceded all other construction in and upon a given area of vacant or cleared land.

Undoubtedly situations will arise where it will be difficult to determine whether in a particular instance the construction is original construction or merely an alteration or repair to an existing building or improvement. A difficult problem would be posed if a structure of little value were modified by an addition worth much more than the original building. In the absence of a clearer indication as to the legislature's intent, more precise definition of the term must await decisional delineation.

As to the purpose of AS 34.35.060(c) and the legislature's use of the term "original construction," Judge Ritchie's opinion in Wagner v. Shaw [11] is instructive. In *Wagner*, a mortgagee sued to foreclose. Subsequent to execution and recording of the mortgage, alterations had been performed on a pre-existing building on the land and mechanics' liens for these alterations were filed. The mechanics' lien claimants intervened in the foreclosure suit, claiming priority over the mortgagee. The predecessor to AS 34.35.060(c) then read:

[A]ll liens created by this code upon any building or other improvements shall be preferred to all prior liens, mortgages, or other incumbrances upon the land upon which the building or other improvement shall have been constructed or situated when altered or repaired; and in enforc-

ing such lien, such building or other improvement may be sold separately from the land. * * * [12]

Under this act, Judge Ritchie held that the statute only gives priority to original construction, for the reason that an entire building can be removed from the ground without damage to the original security, while to give priority for an alteration of a mortgaged building may diminish the mortgage security.[13]

Of significance is Judge Ritchie's observation that the purpose of the statute is "to save to a mortgage all its original security, but to give all added value to the claimants who have created it." [14] Therefore, even though a literal interpretation of the statute would have given priority to the lien claimants who had merely performed alterations or repairs upon an existing improvement, Judge Ritchie concluded that the forerunner of our AS 34.35.060(c) accorded priority only where such priority would not "confiscate" the mortgagee's security.[15] In 1953, our legislature adopted Judge Ritchie's terminology when it amended the *Wagner* statute by adding the phrase "original construction" in order to limit the priority of mechanics' liens to instances of original construction.

Taking the foregoing as the intent behind the legislature's use of the phrase "original construction," we conclude that factually the new addition to the Pal Joey building was not original construction within the intendment of AS 34.35.060(c). Here the addition was precisely that in character, namely, an addition to a pre-existing building. This factor, when considered in conjunction with the relative small size of the addition and the highly significant fact that the new addition to the Pal Joey building cannot be removed without

11. 6 Alaska 647 (4th Div. 1922).

12. Comp.L.Alaska § 693 (1913).

13. Wagner v. Shaw, 6 Alaska 647, 648 (4th Div. 1922).

14. *Id.* at 649.

15. In this regard, Judge Ritchie said: Where an entire new building, or an

addition which can be separated and moved, are added, the mortgage security is not lessened by giving such lien priority, because the building can be moved, as provided by statute. The difficulty arises when the improvements or alterations are inseparable from the original building.

greatly damaging the premises as they were before the addition was added, leads us to hold that the mechanics' liens in the case at bar are subordinate to the two prior recorded deeds of trusts and the interests obtained by the appellants at the foreclosure sale of the deed of trusts which had been granted them by the Reillys.[16] We therefore conclude that the Lynches have priority over the mechanics' lienors by virtue of their prior recorded deed of trust and purchase at foreclosure sale.

In the case at bar the trial court further determined that the Lynches were subordinate to the three lien claimants because of

16. The trial court made the following finding as to the new addition which it ordered sold separately and removed:

The building [i. e., the addition] probably would have to be destroyed to be removed. In addition removal of the new building will likely destroy the usefulness of the original building. After all, the lavatories and heating plant are located in the new building. Furthermore, it is at least possible, in fact likely, that removal of the new building will leave the original building exposed to the elements.

Despite these findings, the trial court ordered separate sale and removal of the new addition, pursuant to AS 34.35.060 (d). This subsection pertaining to mechanics' and materialmens' lien priorities provides in part that: "In enforcing the lien, the building or other improvement may be sold separately from the land."

17. AS 34.35.065 provides:

(a) A building or improvement mentioned in § 50 of this chapter constructed with the knowledge of the owner of the land or the person having or claiming an interest in the land is considered to be constructed at the instance of the

their failure to post a notice of nonresponsibility as required by AS 34.35.065.[17] In Brand v. First Federal Savings & Loan Association,[18] the companion decision to the case at bar, we held that a beneficiary of a deed of trust is not a "person having or claiming an interest in the land" within the intendment of AS 34.35.065. Upon analysis of our lien laws, we concluded in *Brand* that mortgagees and beneficiaries of deeds of trust are not required to post notices of nonresponsibility in order to protect a given statutory priority.[19]

Reversed.

BONEY, C. J., not participating.

owner or person having or claiming the interest.

(b) The interest owned or claimed is subject to a lien filed in accordance with §§ 50—120 of this chapter, unless (1) the owner or person having or claiming an interest in the land gives notice within three days after he obtains knowledge of the construction, alteration or repair that he will not be responsible for it, by posting a notice to that effect in writing in some conspicuous place upon the land or upon the building or other improvement located on the land; (2) the notice is signed by him in the presence of two attesting witnesses or acknowledged by him before a notary public; (3) the posting of notice is attested to by a witness; and (4) an attested or notarized copy of the notice is recorded with the recorder of the recording district in which the land, building or other improvement is located within three days after the posting of the notice.

18. Opinion No. 1154 & 1119, 478 P.2d 829 (Alaska 1970).

19. *Id.* at 833–834.